UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BENJAMIN MARTIN ONOSKO,<br><br>        Plaintiff,<br><br>v.<br><br>AUSTIN SMITH,<br><br>        Defendant. | Case No. 3:14-cv-00004-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Before the Court is Plaintiff Benjamin Onosko's Motion for Attorney fees, as amended, requesting an award of fees in the amount of $13,190.00. (Dkt. 32, 33.) The post-judgment motion was referred to the undersigned magistrate judge on December 16, 2014. The parties have fully briefed the motion and the matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the motion will be decided on the record before the Court. Dist. Idaho L. Rule 7.1. For the reasons explained, the Court will

recommend the motion be granted in part and denied in part. The Court will recommend Plaintiff be awarded $380.00 in attorney fees.

## BACKGROUND

Plaintiff Benjamin Onosko, a licensed attorney[1] in the state of Idaho, filed this action on behalf of himself on January 3, 2014. Onosko appeared pro se on all pleadings filed on his own behalf until November 19, 2014, when attorney Katheryn Bilodeau filed a Notice of Appearance as counsel for Onosko. (Dkt. 23.)

On November 21, 2014, Defendant Austin Smith served an Offer of Judgment on Plaintiff and his attorney in the amount of $375.00, plus any "legally recoverable and reasonable attorney fees and costs, accrued to date, in an amount to be set by the Court." (Dkt. 27.) On December 1, 2014, Onosko filed, through counsel, a notice of acceptance of the offer of judgment. (Dkt. 28.) The Court then entered judgment on December 2, 2014, in the amount of $375.00. (Dkt. 30.) Onosko later filed a bill of costs, which was taxed against Smith in the amount of $1,080.60 for the court filing fee of $400.00 and deposition costs of $680.00. (Dkt. 38.)[2]

Onosko's motion for attorney fees, as amended, requests an award of fees under 42 U.S.C. § 1988. He requests fees not only for the time spent by Ms. Bilodeau after she filed her notice of appearance, but also for all legal services performed by Ms. Bilodeau

---

[1] The pleadings indicate Onosko's bar number is ISB No. 8448.
[2] Not all costs claimed were allowed.

**REPORT AND RECOMMENDATION - 2**

during the time Onosko represented himself pro se, and for fees incurred after the date the offer of judgment was served.[3]

Ms. Bilodeau entered into three letter agreements with Onosko. The first, dated August 13, 2014, indicated Ms. Bilodeau agreed to provide "limited attorney services" to Onosko restricted to legal research, analysis, and assistance with drafting memoranda. The engagement did not include in-court or out-of-court legal representation, and Onosko agreed to "continue to represent [himself] in all in-court and out-of-court proceedings," retaining the ability to use Ms. Bilodeau's written product "in any way [he] saw fit." This agreement was later amended on August 20, 2014, to include Ms. Bilodeau's draft of a summary judgment memorandum and assistance to Onosko in preparing for an upcoming deposition where Onosko would be deposing Defendant Smith. Between August 13, 2014, and November 13, 2014, Ms. Bilodeau billed her services at the rate of $100.00 per hour, and spent 120.1 hours.

On November 14, 2014, the fee agreement was amended a third time. Now, Ms. Bilodeau and Onosko agreed to expand the scope of Ms. Bilodeau's services to include "full legal representation" and to assume full responsibility for Onosko's representation, including all court appearances. Under this amendment, Ms. Bilodeau would bill her services at the rate of $200.00 per hour. She spent 2.8 hours between November 18, 2014, and November 21, 2014,[4] which time included 1.2 hours drafting and filing the notice of appearance.

---

[3] In his reply memorandum, Onosko concedes he is not entitled to any fees incurred after November 21, 2014, and he withdrew his request for attorney fees accrued after that date. Reply Mem. at 4 (Dkt. 37.)
[4] *See* note 3, supra.

**REPORT AND RECOMMENDATION  - 3**

Ms. Bilodeau is admitted to the Idaho State Bar and has been licensed to practice law in Idaho since 2012. In support of the fee request, Ms. Bilodeau submitted the affidavit of Linda Pall, who has been licensed to practice law for 29 years and who currently practices in the Moscow, Idaho community. According to Ms. Pall, the typical average hourly rate for an experienced attorney in Moscow, Idaho, who is the lead attorney for a party in a Section 1983 civil rights case, is between $150 and $200 per hour, depending upon the attorney's experience, the scope of the case, and the complexity of the issues raised in the matter. Ms. Pall charges $250.00 per hour for her time in civil rights cases.

Onosko argues he is entitled to recover attorney fees for the following reasons: (1) Onosko enjoyed an attorney-client relationship with Ms. Bilodeau; (2) other courts have allowed pro se litigants to recover attorney fees for third-party counsel; and (3) there are no special circumstances that warrant the denial of fees, and the balance of equities favors the award of fees. Smith contests any award of fees save for a fee of $420.00 because, under the first and second agreements, there was no attorney-client relationship, and special circumstances exist to justify denying an award of fees, including public policy and ethical considerations. Further, Smith asserts the fees claimed are unreasonable, both in terms of the time spent and because of the $200.00 per hour rate charged after November 14, 2014.

## DISPOSITION

In any action to enforce a provision of 42 U.S.C. § 1983, the Court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable

**REPORT AND RECOMMENDATION - 4**

attorney's fee as part of the costs." 42 U.S.C. § 1988. The purpose of Section 1988 is to encourage litigation protecting civil rights, and enable potential plaintiffs to obtain the assistance of competent counsel in doing so. *Kay v. Ehrler*, 499 U.S. 432, 436 (1991). The overriding statutory concern is the "interest in obtaining independent counsel for victims of civil rights violations." *Kay*, 499 U.S. at 437.

To that end, the courts examine whether a "paying relationship" exists between an attorney and a client, whether the attorney is functioning as an objective and independent agent, and whether an attorney-client relationship exists. *Id.* at 435-36. But, pro se litigants, whether they be untrained in the law or licensed to practice law, are not entitled to attorney fees under Section 1988. *Id.* at 435, 436. The United States Supreme Court explained that a rule authorizing an award "of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf." *Id.* at 438.

The Court conceives of no rationale to carve out a distinction from *Kay*. Here, Onosko represented to the Court he was appearing pro se, and was legal counsel to himself. He cannot now claim that he had an attorney-client relationship with Ms. Bilodeau prior to her appearance on November 19, 2014. Such an argument is not only contradictory, it is disingenuous, at best. If Ms. Bilodeau was indeed acting, in all respects, as an attorney for Onosko, then the account by Mr. Onosko, a member of the Idaho State Bar, that he did not have an attorney representing him, was less than

forthright.[5] *See Wesley v. Don Stein Buick, Inc.*, 987 F.Supp. 884, 886 (D. Kan. 1997) (having a litigant appear to be pro se when in truth an attorney is authorizing pleadings is "far below the level of candor which must be met by the members of the bar."). Moreover, the argument Ms. Bilodeau advances raises issues contrary to Rule 11; if she indeed was acting as Onosko's attorney, but failed to appear in the matter, she was circumventing her obligations under Rule 11 and avoiding the Court's authority to sanction conduct violating the Rule. *See Chaplin v. Du Pont Advance Fiber Systems*, 303 F.Supp.2d 766, 773 (E.D. Va. 2004) (explaining rationale behind rule prohibiting ghostwriting and rule requiring local attorney to sponsor out of state attorney's appearance on behalf of plaintiffs was to provide supervision over those attorneys who practice before the court).

Further, the plain language of Ms. Bilodeau's agreement with Onosko indicates she did not intend to act as an agent and assume legal representation of Onosko. The initial agreement unequivocally and unambiguously indicated Ms. Bilodeau was not assuming legal representation, and that Onosko could use her written product "in any way [he] saw fit." Such language limiting the scope of services does not rise to the level of an attorney-client relationship, which presupposes the attorney has authority to act on the client's behalf, control the legal strategy, and present the client's case. *Kay*, 499 U.S. at 436 n.6 (noting the definition of an attorney is "one who is legally appointed by another to transact business for him; *specif*: a legal agent qualified to act for suitors and

---

[5] The Court is not inclined to comment further on the issues implicated here under the Idaho Rules of Professional Conduct, as bar counsel would be in a position to more adequately address the issue of candor toward the tribunal.

**REPORT AND RECOMMENDATION - 6**

defendants in legal proceedings."). And, it appears Ms. Bilodeau recognized that fact by virtue of the fees charged. She billed $100.00 per hour for legal research and writing, and $200.00 per hour once she assumed all responsibility under the November 19, 2014, agreement. In other words, Ms. Bilodeau's argument is belied by the unambiguous language of the agreements.

The cases Onosko relies upon where a court awarded pro se litigants attorney fees for consultation with outside counsel are distinguishable here. In *Blazy v. Tenet*, 194 F.3d 90, 94 (D.C. Cir. 1999), the plaintiff sued under the Freedom of Information Act seeking access to and amendment of documents in his personnel file at the Central Intelligence Agency where he was formerly employed. During the course of the litigation, the plaintiff consulted with outside counsel. At the conclusion of the case, the plaintiff sought attorney fees and litigation costs under the Privacy Act.

The court in *Blazy* held that the plaintiff's pro se status did not, by itself, preclude the recovery of fees for consultations with outside counsel, so long as the plaintiff could establish outside counsel "enjoyed a genuine attorney-client relationship…, were situated to offer 'independent' legal advice and assistance, and were presumably paid for their services." *Blazy*, 194 F.3d at 94. Further, the court commented on the different purpose behind Section 1988's fee provision, which encompasses a statutory policy to incentivize the retention of counsel in every case. *Id.* In contrast, the court noted that the scope of costs available under the Privacy Act extended not just to attorney fees, but to "other litigation costs." *Id.* And, the correction of records compiled regarding individuals serves

a different purpose—to allow individuals the opportunity to review their records and request the correction of inaccuracies. *Id.*

Similarly, the plaintiff in *Ray v. U.S. Dept. of Justice*, 87 F.3d 1250 (11th Cir. 1996), sued under the Freedom of information Act for access to Immigration and Naturalization Service documents about Haitian nationals. The plaintiff, a lawyer, filed six requests in his own name. When INS did not respond, the plaintiff sued and was successful. He filed for fees under the FOIA for his own work and for the legal work of another lawyer who assisted him.

The court in *Ray* denied fees to reimburse the plaintiff, explaining that the rationale in *Kay* applied with equal force to attorney fee requests under the FOIA by pro se litigants who are also attorneys. *Ray*, 87 F.3d at 1251-52. The court affirmed the fee award for the work of his co-counsel. *Id.* at 1252. The district court had considered fees under the FOIA, which allows successful litigants to recover reasonable attorney fees "and other litigation costs." *Ray v. U.S. Dept. of* Justice, 856 F.Supp. 1576, 1579 (S.D. Fla. 1994) (citing 5 U.S.C. § 552(a)(4)(E)). But, there was apparently $19,515 in *uncontested* attorney fees sought by co-counsel. Thus, the only determination the lower court made was whether outside counsel deserved an enhancement factor to the fee award, *Ray*, 856 F.Supp. at 1583, a question the court of appeals answered in the negative. *Ray*, 87 F.3d at 1252 (concluding the district court did not abuse its discretion for not enhancing the lodestar).

The first distinguishing factor here is Section 1988, which does not award "other litigation costs" like the fee provisions of the FOIA and the Privacy Act. The courts in

**REPORT AND RECOMMENDATION - 8**

*Ray* and *Blazy*, while relying upon *Kay* to deny the pro se attorney plaintiffs their own fees, looked to the FOIA and Privacy Act provisions to determine "other litigation costs" could encompass the fees of outside counsel who did not enter an appearance on behalf of the plaintiffs. Second, the statutory policy differs. Section 1988 serves to encourage pro se litigants, even those who are attorneys, to retain competent counsel in civil rights cases, which serve to vindicate rights belonging to all citizens. In contrast, the FOIA exists to allow individuals to obtain information about government activities, while the Privacy Act safeguards the public from the unwarranted collection, maintenance, use and dissemination of personal information contained in agency records by allowing individuals to ensure their records are accurate.

The policy inherent in Section 1988 of encouraging legal representation serves the purpose of helping to filter out meritless civil rights claims and ensuring the effective prosecution of meritorious claims. That policy is not inherent in either the FOIA or Privacy Act, because individuals are seeking information—not to vindicate rights belonging to all citizens. Finally, and most importantly, the courts in *Ray* and *Blazy* found an independent, agency relationship existed between the plaintiff and the outside counsel. Here, in contrast, the plain language of Ms. Bilodeau's agreements indicates otherwise, as Onosko could use her product "as he saw fit." It does not appear from the language of the agreements prior to November 14, 2014, that Ms. Bilodeau had any oversight, control, or participation in the conduct of the litigation.

Finally, special circumstances render an award unjust, and the balance of equities favors the denial of fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Vasquez v.*

**REPORT AND RECOMMENDATION - 9**

*Rackauckas*, 734 F.3d 1025, 1055 (9th Cir. 2013). Allowing fees under the circumstances present here would not further the purpose behind Section 1988. *Vasquez*, 734 F.3d at 1055. The stated purpose behind the attorney fee provision is to give citizens who cannot afford legal counsel access to legal assistance, and give such persons effective access to the judicial process. *Kay*, 499 U.S. at 436 n.8. The attorney also is supposed to act as a gatekeeper, so as to filter out meritless claims, and to ensure the prosecution of meritorious claims. *Kay*, 499 U.S. at 436-37.

Here, Onosko drafted and filed his own complaint and prosecuted his case pro se for eight months before he sought the assistance of Ms. Bilodeau on August 13, 2014. But, Onosko is a licensed member of the Idaho state bar, capable of prosecuting this matter on his own if he so chose, with effective access to the legal system.[6] And, there is no indication Ms. Bilodeau acted in the manner contemplated by the statute, given her initial limited role. Thus, awarding Ms. Bilodeau her pre-appearance fees in this matter would not serve to further the purposes behind the fee provision.

Policy considerations militate against the award of fees as well. Although ghostwriting raises honesty concerns when the ghostwriting is for non-lawyer litigants, the same is not necessarily true when the ghostwriting is for an attorney litigant. Presumably, neither the court nor opposing counsel would be under the misimpression that documents were drafted by a non-lawyer deserving of special treatment. *Compare Wesley v. Don Stein Buick, Inc.*, 987 F.Supp.884, 886 (D. Kan. 1977) (condemning the

---

[6] The Court does not mean to imply that attorneys wishing to file a civil rights claim on their own behalf must forgo the assistance of counsel. If hired to assist pro se attorney plaintiffs with their civil rights claims, counsel would be furthering the gatekeeper role.

practice of ghostwriting as unethical and a deliberate evasion of the responsibilities imposed on attorneys) *with* ABA Formal Ethics Opin. 07-446 (May 5, 2007) (discussing the increasing prevalence of "unbundling" of legal services, and concluding there is no prohibition in the Model Rules of Professional Conduct against undisclosed assistance to pro se litigants, so long as the lawyer does not do so in a manner that violates rules otherwise applicable to the lawyer's conduct).

But, the situation here implicates Rule 11, and the duty of candor owed by both Onosko and Ms. Bilodeau toward the Court and opposing counsel. Because Onosko appeared pro se, opposing counsel was entitled to rely upon the holding in *Kay* that attorney fees were not an issue in these proceedings. Attorney fees became an issue only after Ms. Bilodeau filed her notice of appearance, and apparently became the catalyst for the offer of judgment. Further, the Court is entitled to know who represents the plaintiff given its responsibilities to supervise the lawyers who appear before it. If Ms. Bilodeau was in fact providing full legal representation under an attorney-client relationship, as she and Onosko claim, the lack of candor toward the Court is an evasion of the responsibilities imposed upon her under the rules. The Court should not and will not sanction such an arrangement with an award of pre-appearance fees.

Having so concluded, the Court turns to the reasonableness of the fees for the work performed after November 14, 2014, and before the offer of judgment. Ms. Bilodeau billed 2.8 hours, 1.2 of which was spent drafting and filing a two-page notice of appearance, a period of time which is unreasonable for such a task. Smith argues Ms. Bilodeau's hourly rate is excessive for an attorney of her experience, and should be

**REPORT AND RECOMMENDATION - 11**

reduced to $150.00 per hour, yielding a fee award of $420.00 (2.8 x $150), which is generous given the excessive amount of time spent drafting the notice of appearance. Alternatively, the Court could accept Ms. Bilodeau's $200.00 hourly rate, and reduce the time spent on the notice of appearance to a more reasonable period of .3 hours, yielding a fee award of $380.00 (1.9 x $200). The Court, in the exercise of its discretion, finds that a reasonable attorney fee is $380.00.

## CONCLUSION

For the reasons explained, the Court will recommend that the request for all pre-appearance fees be denied. Under the circumstances here, to sanction the arrangement between Onosko and Ms. Bilodeaux with an award of fees would frustrate the purpose of Section 1988, lead to inequitable results, and condone arguably unprofessional conduct. The Court recommends that a reasonable attorney fee in the amount of $380.00 be awarded for the time spent between November 14, 2014, and November 21, 2014, when the offer of judgment was made.

# RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Plaintiff's Motion for Attorney Fees (Dkt. 32) be **GRANTED IN PART AND DENIED IN PART**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **February 11, 2015**

Honorable Candy W. Dale
United States Magistrate Judge